# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SHAWN PATRICK GREENBLATT,

Plaintiff,

v.

DR. I. PATEL, et al.,

Defendants.

_______________________________________/

Case No. 1:12-cv-00046-LJO-SKO (PC)

FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY BE DENIED AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED

(Docs. 63 and 72)

OBJECTION DEADLINE: TWENTY DAYS
RESPONSE DEADLINE: TEN DAYS

## I. Procedural Background

Plaintiff Shawn Patrick Greenblatt ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 10, 2012. Plaintiff is proceeding on his amended complaint, filed on September 26, 2013, against Defendants Lawson, Brockington, Ocampo, and Gingras[1] ("Defendants") for violation of the Eighth Amendment of the United States Constitution and for conspiracy to violate his constitutional rights.[2] Plaintiff's claims arise from events which occurred at Kern Valley State Prison ("KVSP") in Delano, California in January 2011.

---

[1] Identified as Gringas in the amended complaint.

[2] The Court appointed counsel to represent Plaintiff for the limited purpose of identifying the two Doe defendants against whom he stated a cognizable claim in his original complaint. (Docs. 19, 20, 21.) Counsel subsequently filed

On May 9, 2014, Defendants filed a pre-discovery motion for summary judgment for failure to exhaust the available administrative remedies in compliance with 42 U.S.C. § 1997e(a) and for improperly naming Lawson and Brockington as defendants. Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 135 S.Ct. 403 (2014). (Doc. 63.) Plaintiff filed an opposition on May 30, 2014,[3,4] and Defendants filed a reply on June 24, 2014. (Docs. 67, 71.) On July 7, 2014, Plaintiff filed a motion seeking a thirty-day extension of time to file a surreply, and Defendants filed an opposition on July 8, 2014. (Docs. 72, 73.)

Parties do not have the right to file surreplies and motions are deemed submitted when the time to reply has expired. Local Rule 230(*l*). The Court generally views motions for leave to file a surreply with disfavor. *Hill v. England*, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D.Cal. 2005) (citing *Fedrick v. Mercedes-Benz USA, LLC*, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005)). However, district courts have the discretion to either permit or preclude a surreply. *See U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); *JG v. Douglas County School Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file surreply where it did not consider new evidence in reply); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond). In this instance, Plaintiff did not submit a proposed surreply and his motion sets forth no grounds justifying deviation from standard practice and procedure. Fed. R. Civ. P. 7(b)(1)(B); Local Rule 230(*l*); *Hill*, 2005 WL 3031136, at *1. Therefore, the Court recommends the motion be denied. Fed. R. Civ. P. 7(b)(1)(B); *Hill*, 2005 WL 3031136, at *1.

---

an amended complaint on Plaintiff's behalf naming four defendants and she was relieved of her voluntary appointment, having fulfilled its purpose. (Docs. 38, 39.)

[3] Incorrectly captioned as a "traverse."

[4] Plaintiff was provided with contemporaneous notice of the requirements for opposing a summary judgment motion for failure to exhaust administrative remedies. *Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012); *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998). (Doc. 63-3.)

**II. Defendants' Motion for Summary Judgment**

**A. Statutory Exhaustion Requirement**

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and unexhausted claims may not be brought to court, *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910 (2007) (citing *Porter*, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. *Id.*

**B. Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may

consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, *Albino*, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," *id.* at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* This requires the plaintiff to "show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)). "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

**C. <u>Allegations Underlying Plaintiff's Legal Claims</u>**

Plaintiff is currently incarcerated at Salinas Valley State Prison in Soledad, California. Plaintiff's Eighth Amendment and conspiracy claims arise out of events which occurred in January 2011 at KVSP. Plaintiff alleges that on the night of January 22, 2011, between approximately 10:30 p.m. and 11:30 p.m., he began experiencing a recurrence of excruciating abdominal pain and severe vomiting of black and green bile caused by a bowel impaction. Throughout the night, Plaintiff sought medical help from first watch staff, but Sergeant Lawson and Correctional Officers Brockington, Ocampo, and Gingras refused to aid him, despite their awareness of both his condition and the bile all over him and his cell floor. Plaintiff alleges he was a called a "pussy ass" and a "fat ass;" he was accused of mixing Kool-Aid, coffee, and water together to create the "bile;" and Defendant Lawson stated, "Oh, you're the Jew who used to be a N.L.R. (Nazi Low Rider) prison gang member." (Doc. 38, ¶¶16, 17.) Several times during the night, Defendant Brockington told Plaintiff that Defendant Lawson had instructed him not to call

Lawson or the medical unit. Plaintiff ended up spending the night on the floor of his cell in excruciating pain.

**D. Undisputed Facts**

**1. Administrative Exhaustion**

1. During the time period relevant to Plaintiff's claims, he was an inmate incarcerated at KVSP and he was housed in building Delta 7.

2. During the time period relevant to Plaintiff's claims, Defendant Lawson, a sergeant, and Defendants Gingras, Brockington, and Ocampo, correctional officers, were employed by the California Department of Corrections and Rehabilitation ("CDCR") and worked at KVSP in Delta 7.

3. On January 22, 2011, between 10:30 p.m. and 11:30 p.m., approximately, Plaintiff complained to correctional staff that he needed medical help because he was in pain and had been throwing up.

4. Despite Plaintiff's requests, correctional staff did not provide him access to the medical assistance he requested and instead left him in his cell until morning.

5. Plaintiff, who was aware that CDCR provided an inmate grievance system, submitted a grievance regarding the issues contained in his amended complaint on a CDCR 602-HC Inmate/Parolee Health Care Appeal Form, which was logged as institutional log number KVSP-34-11-10399.

6. This form states that it is to be used by an inmate to "appeal any policy, action, or decision" that "involves health care services (medical, dental or mental health)."

7. Since August 2008, CDCR's prison health care system has operated under a Federal Receiver appointed in the *Plata v. Schwarzenegger* class action litigation.

8. Because the Federal Receiver oversees the operation of CDCR's prison health care system, medical staff and the services they provide are under the supervision of the institution's Chief Executive Officer of Medical Services, while custody staff are under the supervision of the institution's Warden.

9. CDCR has a two-pronged appeal process available to inmates: health care and non-health care.

10. Depending upon the appeal issue, the inmate must submit his appeal on the appropriate CDCR Form, either a CDCR 602 (for non-health care grievances) or a CDCR 602-HC (for health care grievances).

11. This separate appeal process is a direct result of the appointment of the Federal Receiver over CDCR's prison health care system, whereby an institution's Warden has sole and separate jurisdiction over custody staff and the Chief of the Office of Appeals ("OOA"), on behalf of the Secretary of the CDCR, has sole and separate jurisdiction over custody staff appeals.

12. The OOA does not have jurisdiction over health care staff, and it does not accept or adjudicate health care service appeals.

13. The institution's Chief Executive Officer and, ultimately, the Chief of the Inmate Communications & Appeals Branch, on behalf of the Director of Policy and Risk Management Services, have sole and separate jurisdiction over health care staff.

14. Access or escort to health care services, which is provided by custody staff, is a custody issue, not a health care services issue.

15. Any issue regarding custody staff must be appealed on a CDCR Form 602.

16. Custody appeals are screened by the institution's Appeals Coordinator.

17. Any issue regarding health care services and care must be appealed on a CDCR Form 602-HC.

18. Health care appeals are then screened by the institution's Health Care Appeals Coordinator.

19. Plaintiff's 602-HC appeal, a health care appeal, was initially screened out by Health Care on February 22, 2011, and again on March 8, 2011.

20. The appeal was ultimately accepted by the Health Care Services appeals office on March 22, 2011.

21. On May 5, 2011, Plaintiff's 602-HC appeal was partially granted at the first level. The first level response summarized Plaintiff's appeal issue as: "You contend that you did not receive

medical care when you went 'man down.' You claim that your medical condition is being ignored by medical staff. You also contend that the Physicians have not looked into your medical history which in turn causes your medical care to be inconsistent."

22. At the first level, Plaintiff was interviewed by a licensed vocational nurse to afford him the opportunity to further explain his medical concerns.[5]

23. The first level response identified the regulations governing Plaintiff's 602-HC appeal as California Code of Regulations, Title 15, sections 3350-3358.

24. These regulations cover medical and dental services.

25. The first level response explained that Plaintiff's appeal was partially granted in that he was provided with access to his medical records, but it did not address the allegations made in this suit by Plaintiff regarding access to medical services by the first watch sergeant.

26. When inmates are dissatisfied with the first level response, they must request a second level appeal review by following the instructions on the 602-HC appeal form.

27. On May 16, 2011, Plaintiff requested a second level appeal review for KVSP-34-11-10399, his health care appeal.

28. Plaintiff's stated reasons were: "There has been no process looked into or explained for the wrong meds being given by Dr. Patel & Delio. No explanation as to why I lost 25 lbs. in 9 days [due] to medical neglect by KVSP medical. Not happy with response to 602 obviously Dr. & staff were at fault."

29. In his second level appeal, Plaintiff did not mention the first watch sergeant or access to medical services as a reason for his dissatisfaction with the first level response, nor did he identify it as a reason for requesting the second level review.

30. On July 22, 2011, Plaintiff's 602-HC appeal was partially granted at the second level.

31. The second level response summarized Plaintiff's appeal issue as medical.

---

[5] Although Plaintiff partially denies this fact, he has not submitted any evidence bringing it into dispute and he does not dispute that he was interviewed. (Opp., court record p. 1.) Plaintiff argues that the licensed vocational nurse did not write down all of his concerns, but notwithstanding the absence of any evidence on this point, Plaintiff's desire to add facts or an explanation does not bring into dispute the fact that he was interviewed for the purpose of further explaining his concerns.

32. The second level response further stated that Plaintiff contended he did not receive medical care when he went "man down" on January 15, 2011, not January 22, 2011, as alleged in his 602-HC appeal and in his amended complaint.

33. The second level response identified the medical and dental regulations that govern Plaintiff's appeal issue.

34. The second level response detailed Plaintiff's medical care and stated "inmates cannot dictate discipline for staff" regarding his complaint that "doctor, nurse, RN & sergeant" receive marks in their files.

35. Plaintiff was dissatisfied with the second level response and submitted his health care appeal for Director's Level review.

36. At the Director's Level, or third level, Plaintiff's appeal was assigned tracking/log number KVSP HC 11029257.

37. Plaintiff's stated reasons for requesting a third level review were: "[I]t's the Drs job to make sure I'm not given meds I'm allergic to, it's his duty. Also, S. Lopez states only once was I given Phenergan not true I was also given a shot by Dr. Delio on 1-16-11. This should be treated as a staff complaint. Not once was I given any pain meds. It's the TTA's duty to take my weight knowing I'm vomiting and not eating for nine days."

38. Plaintiff's third level appeal did not identify any issue concerning a first watch sergeant as a reason for his dissatisfaction with the second level response.

39. The third level response confirmed that Plaintiff's appeal issues were medical and reiterated that inmates do not dictate or initiate investigation actions against staff.

40. Because Plaintiff's issue regarding a first watch sergeant concerned a custody matter and not a health care matter, the Director's Level response of November 17, 2011, informed Plaintiff that medical staff have no jurisdiction over custody staff.

41. Plaintiff was specifically advised to communicate with custody staff to resolve his problem concerning the sergeant.

42. Upon receipt of the Director's Level response, as explicitly stated in the 602-HC itself, Plaintiff was on notice that his 602-HC appeal only addressed his medical issues, not his issue with custody staff.

43. Plaintiff's only non-healthcare appeal originating from KVSP and addressed through the Director's Level was accepted by OOA on November 17, 2011, and assigned case number 1106308 (Institutional Log No. KVSP-11-01312).

44. In appeal number KVSP-11-01312, Plaintiff complained that his due process rights were violated regarding a Rules Violations Report he received for possession of approximately two gallons of alcohol.

45. The discovery of alcohol in Plaintiff's cell occurred on March 24, 2011.

46. New regulations were adopted on January 28, 2011, and the amendments are those applicable in this case.

47. Under the January 28, 2011, amendments to the regulations governing inmate appeals, inmates are required to list each staff member involved and describe their involvement.[6]

48. Appeal KVSP HC 11029257/KVSP-34-11-10399 did not list or describe the involvement of Defendants Brockington, Ocampo, and Gingras, and the health care appeal did not make reference to custody staff, other than a first watch sergeant, as being involved in the alleged incident.

**2. <u>Staff Involved in Incident</u>**

49. On December 7, 2012, the Court appointed counsel solely to assist Plaintiff in identifying John Does 1 and 2 listed in his original complaint.

50. On September 6, 2013, Plaintiff filed his amended complaint naming the four defendants: Lawson, Gingras, Brockington, and Ocampo.

51. Plaintiff's amended complaint alleges that between 10:30 p.m. and 11:30 p.m. on January 22, 2011, he experienced excruciating pain and vomiting; he went "man down;" and all four defendants responded to his cell but refused to call medical staff on his behalf.

---

[6] Plaintiff's argument that he was hospitalized from January 25, 2011, to February 3, 2011, and unaware of the new regulations does not bring the fact of the regulatory language into dispute.

52. At CDCR, custody staff work eight hour shifts that are broken down into three "watches" per day. First watch begins at 10:00 p.m. and ends at 6:00 a.m. the next day; second watch starts at 6:00 a.m. and ends at 2:00 p.m. on the same day; and third watch begins at 2:00 p.m. and ends at 10:00 p.m. on the same day. First watch, unlike second and third watch, spans two calendar days. The calendar day on which a first watch officer is considered to be working is actually the day on which they end their shift at 6:00 a.m., not the day on which they begin their watch at 10:00 p.m.

53. For purposes of Plaintiff's amended complaint, the first watch staff Plaintiff complains of would be custody staff working first watch on January 23, 2011, not the first watch staff who worked on January 22, 2011; that is, officers who started work at 10:00 p.m. on January 22, 2011, and completed their shift at 6:00 a.m. on January 23, 2011.[7]

54. Defendants' CDCR Forms 998 and the PPAS Custody Sign-In/Out forms for Section 4, Facility D, First Watch, for the dates of January 22 and 23, 2011, show that Defendants Lawson and Brockington were not working first watch in Facility D on January 23, 2011.

55. Defendants' CDCR Forms 998 and the PPAS Custody Sign-In/Out forms for Section 4, Facility D, First Watch, for the dates of January 21 and 22, 2011, show Defendants Lawson and Brockington were working first watch in Facility D on January 22, 2011, which means that they started their first watch at 10:00 p.m. on January 21, 2011, and ended their shift at 6:00 a.m. on January 22, 2011.

**E. <u>Exhaustion of Eighth Amendment and Conspiracy Claims</u>**

**1. <u>Summary of Parties' Arguments</u>**

**a. <u>Defendants</u>**

The parties do not dispute that Plaintiff exhausted appeal number KVSP HC 11029257/KVSP-34-11-10399 on November 17, 2011. However, Defendants argue that the health care appeal did not suffice to exhaust Plaintiff's claim against custody staff for failing to summon medical care on the night of January 22, 2011, which Plaintiff allegedly spent writhing in

[7] Plaintiff's unsupported argument regarding how the staff identification error was made does not bring into dispute this fact.

excruciating pain on his cell floor, covered with black and green vomited bile. Defendants contend that Plaintiff was aware custody staff issues must be appealed on a CDCR Form 602 while health care issues must be appealed on a CDCR Form 602-HC, and that he was aware custody and health care appeals are screened by different appeals coordinators. Defendants also contend that Plaintiff's CDCR 602-HC appeal did not give prison officials proper notice of his claim, as it did not list the defendants or describe their conduct, as required by the regulations that went into effect on January 28, 2011.

Furthermore, Defendants argue that the Director's Level response put Plaintiff on notice that his health care appeal only addressed his medical issues. Defendants contend that Plaintiff had thirty calendar days from the November 17, 2011, Director's Level response to submit an appeal grieving his custody staff issue about the first watch sergeant on a CDCR Form 602, but he never filed a separate 602 appeal regarding the first watch sergeant or any custody staff related to the alleged incident on January 22, 2011.

**b. Plaintiff**[8]

In response, Plaintiff disputes that his CDCR 602-HC appeal was insufficient to exhaust his claim. Plaintiff contends that the licensed vocational nurse who interviewed him at the first level of review failed to write down all of the concerns he voiced the night of January 22, 2011; that he was never instructed by appeals staff to file a CDCR 602 against custody staff, even though CDCR has a screen-out procedure to cancel or reject appeals; and that he was never instructed in the Director's Level response to file a separate appeal.

Plaintiff also contends that he was at Mercy Hospital from January 25, 2011, to February 3, 2011, and he was in severe pain when he returned. As a result, he was not aware of the new regulations giving him only thirty days from the date of the incident to file an appeal.

---

[8] Plaintiff's evidence consists of his declaration and a number of documents. (Opp., court record pp. 8-27.) In addition, the Court may consider Plaintiff's original complaint, which was verified and filed pro se, to the extent it is based on personal knowledge of facts admissible in evidence. *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004). (Doc. 1.) As discussed in subsection 2(b), Defendants' objection to Plaintiff's inmate appeal dated February 8, 2011, and to the "Inmate/Parolee Request for Interview, Item or Service" forms relating to that appeal for lack of authentication is sustained.

Alternatively, Plaintiff argues that he was prevented from exhausting his CDCR 602 appeal against custody staff. Plaintiff contends he filed a separate CDCR 602 appeal on February 8, 2011, regarding the incident with custody staff but the appeals coordinator did not process it. Plaintiff then submitted a CDCR 22 "Inmate/Parolee Request for Interview, Item or Service" to the appeals coordinator on March 1, 2011, requesting the location or log number for his appeal. Plaintiff received no response and he requested a supervisor's review on March 11, 2011, but again, received no response. Plaintiff contends he submitted a second CDCR 22 "Inmate/Parolee Request for Interview, Item or Service" on March 15, 2011, regarding a log number for his appeal but he received no response and he submitted it for a supervisor's review on March 18, 2011.

Plaintiff also contends that he submitted CDCR 22 "Inmate/Parolee Request for Interview, Item or Service" forms on March 12, 2011, March 16, 2011, and March 19, 2011, seeking the names of staff who worked on his yard on or around January 22, 2011, but he received no responses.

**2. <u>Discussion</u>**

**a. <u>Exhausted CDCR 602-HC Appeal</u>**

**1) <u>Administrative Remedy Process</u>**

Defendants bear the burden of demonstrating the existence of an available administrative remedy and Plaintiff's failure to exhaust that available remedy. *Albino*, 747 F.3d at 1172. Here, there is no dispute that CDCR has an administrative remedy process for inmate grievances which is initiated by submitting a CDCR Form 602 "Inmate/Parolee Appeal" within thirty calendar days (1) of the event or decision being appealed, (2) upon first having knowledge of the action or decision being appealed, or (3) upon receiving an unsatisfactory departmental response to an appeal filed. Cal. Code Regs., tit. 15, §§ 3084.2(a), 3084.8(b)(1) (quotation marks omitted);[9] *Williams v. Paramo*, __ F.3d __, __, 2015 WL 74144, at *7 (9th Cir. Jan. 7, 2015); *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014). The appeal must "describe the specific issue under appeal and the relief requested," and the inmate "shall list all staff member(s) involved and shall

[9] The regulations were amended effective January 28, 2011. However, both the current regulations and the prior regulations provided the same general four-level administrative remedy process. The four level process prior to the amendments effective on January 28, 2011, was described in § 3084.5.

describe their involvement in the issue." § 3084.2(a). Furthermore, the inmate "shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal Form Attachment." § 3084.2(a)(4). Prior to January 28, 2011, CDCR's regulations merely required a description of the problem and the action requested. § 3084.2(a) (2010).

**2) <u>Sufficiency of Appeal</u>**

Exhaustion requirements are designed to deal with parties who do not want to exhaust and who would prefer not to give the agency a fair and full opportunity to adjudicate their claims. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378 (2006) (quotation marks omitted). For this reason, proper procedural and substantive exhaustion of administrative remedies is required, which demands compliance with an agency's deadlines and other critical procedural rules. *Ngo*, 548 U.S. at 90; *Wilkerson*, 772 F.3d at 839. Here, Plaintiff filed a CDCR 602-HC appeal which was accepted for review and exhausted. Although Plaintiff does not dispute the existence of a two-prong appeals process for health care and non-health care issues, his appeal was not cancelled or rejected in whole or in part, and therefore, Court will consider the appeal and its responses to determine whether it was sufficient to exhaust Plaintiff's claim against Defendants arising from their failure to summon medical care for him the night of January 22, 2011. The Court is required to consider the issue under the previous regulation's language in light of Plaintiff's evidence that he was hospitalized during the time the amended regulation requiring greater detail became operative.[10] *Albino*, 747 F.3d at 1173-74. (Doc. 1, Comp., court record p. 9.)

An appeal "suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (citing *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)) (internal quotation marks omitted). "[T]he prisoner need only provide the level of detail required by the prison's regulations," and prior to January 28, 2011, "[t]he California regulations require[d] only that an

---

[10] Although not material to resolution of Defendants' motion, the Court notes that Plaintiff's argument he did not know he was required to submit an appeal within thirty days is of no assistance to him. The amended regulation is *more* generous than the pre-amendment version, which only provided inmates with fifteen working days within which to file an appeal. Cal. Code Regs, tit. 15, §3084.6(c) (2010).

inmate describe the problem and the action requested." *Sapp*, 623 F.3d at 824 (citations and internal quotation marks omitted). While the standard provides a low floor, it advances the primary purpose of a grievance, which is to notify the prison of a problem. *Griffin*, 557 F.3d at 1120 (quotation marks and citations omitted); *accord Akhtar v. Mesa*, 698 F.3d 1202, 1211 (9th Cir. 2012).

Plaintiff's initial appeal contained notice that a first watch sergeant refused to summon medical attention when Plaintiff went "man down" on January 22, 2011, and he left Plaintiff lying on the floor, despite seeing bile all over Plaintiff and his cell. (Motion, Doc. 63-5, Def. Ex. F, court record p. 7.) The appeal as submitted at the first level of review alerted the prison to the nature of the wrong for which redress is now sought. *Sapp*, 623 F.3d at 824 (quotation marks omitted). The first level appeal response also addressed the appeal issue in relevant part as the failure to "receive medical care when [he] went 'man down.'" (Motion, Doc. 63-7, Todd Dec., Ex. B.) Plaintiff was informed that the appeal did not meet the criteria for a staff complaint, however, and his request for an investigation and the discipline of employees was denied while his request for information from his chart was partially granted. (*Id.*)

Because Plaintiff's appeal was granted only as to obtaining chart information and denied as to staff misconduct and discipline, Plaintiff was required to pursue his appeal to the next level of review. *Harvey v. Jordan*, 605 F.3d 681, 683-84 (9th Cir. 2010). At the second level of review, Plaintiff abandoned mention of the first watch sergeant's failure to obtain medical care the night of January 22, 2011, instead stating, "There has been no process looked into or explained for the wrong meds being given by Dr. Patel and Delio, no explanation as to why I lost 25 lbs. in 9 days [due] to medical neglect by KVSP medical. Not happy with response to 602. Obviously Dr. & staff were at fault." (Motion, Doc. 63-5, Def. Ex. F, court record p. 7; Doc. 63-7, Todd Dec., Ex. C.) The second level appeal response summarized Plaintiff's medical history between January and July 2011, and Plaintiff's appeal was partially granted in that he was receiving extensive health care for his medical condition. (Doc. 63-7, Todd Dec., Ex. D.)

At the third level of review, Plaintiff's focus remained on the medical care he received rather than on the failure of first watch staff to summon medical care despite finding him on a bile-

covered floor. (Doc. 63-5, Def. Ex. F, court record p. 7; Doc. 63-7, Todd Dec., Ex. C.) Plaintiff stated, "Not satisfied with second level response. It's the Dr.'s job to make sure I'm not given meds I'm allergic to, it's his duty. Also S. Lopez states only one was I given Phenergan. Not true. I was also given a shot by Dr. Delio on 1-16-11. This should be treated as a staff complaint. Not once was I given any pain meds. It's the TTA's duty to take my weight knowing I'm vomiting and not eating for nine days." (*Id.*) In denying Plaintiff's appeal, the Director's Level decision found no compelling evidence that warranted intervention because his medical condition had been evaluated by licensed clinical staff and he was receiving treatment deemed medically necessary. (Doc. 63-5, Def. Ex. G, court record pp. 11-12.) The response also advised him that medical staff do not have jurisdiction over custody staff, and if he had an issue with custody staff, he was encouraged to communicate with custody staff to resolve the problem. (*Id.*)

Inmate are required to procedurally and substantively exhaust their claims, *Ngo*, 548 U.S. at 90; *Wilkerson*, 772 F.3d at 839, and Plaintiff was therefore required to "use all the steps the prison holds out, enabling the prison to reach the merits of the issue," *Griffin*, 557 F.3d at 1119 (citing *Ngo*, 548 U.S. at 90). Although the floor was "low" under the pre-January 28, 2011, regulations, *Griffin*, 557 F.3d at 1120, Plaintiff was nonetheless aware of the two-prong appeals process separating health care issues from custody issues, he was informed at the first level that his appeal had been rejected as a staff complaint, and his pursuit of his appeal to the second and third levels of review did not include notice of the incident in which he was left lying on a bile covered floor overnight. The Court finds that Plaintiff's abandonment of the incident giving rise to his claim in this action at the second and third levels of review, an incident which, as described, would have been memorable, did not constitute proper exhaustion, as the appeal did not provide adequate notice at the second and third levels of review that he was seeking redress for the incident he now seeks to litigate. *Griffin*, 557 F.3d at 1120-21; *McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870, 876 (9th Cir. 2011).

///

///

///

**b. Missing CDCR 602 Appeal Dated February 8, 2011**

**1) Handwritten Appeal Copy and Request Forms**[11]

Plaintiff's other argument targets the availability of the appeals process with respect to an alleged CDCR 602 grieving the failure of custody staff to summon medical help for him the night of January 22, 2011. *Williams*, __ F.3d at __, 2015 WL 74144, at *7. Plaintiff contends that on February 8, 2011, prior to the submission of his CDCR 602-HC appeal, he submitted a CDCR 602 appeal against custody staff. (Opp., Pl. Ex. A.) After receiving no response, Plaintiff contends he filed several requests for interview seeking the appeal's status. (*Id.*, Exs. B, C.) Defendants objected to these exhibits for lack of foundation and authentication.

"'Unauthenticated documents cannot be considered in a motion for summary judgment,'" and "[t]he authentication of a document requires 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532-33 (9th Cir. 2011) (quoting *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Evid. 901(a)). An inquiry into authenticity concerns the genuineness of an item of evidence, not its admissibility. *Orr*, 285 F.3d at 776. Rule 901(b)(4) provides that evidence may be authenticated by "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances," Fed. R. Evid. 901(b)(4), and documents may be authenticated by review of their contents if they appear to be sufficiently genuine, *Las Vegas Sands, LLC*, 632 F.3d at 533 (citing *Orr*, 285 F.3d at 778 n.24) (quotation marks omitted).

Courts generally have a dim view of authentication objections presented in the absence of any indication that the record's authenticity is genuinely in dispute, *Chamberlain v. Les Schwab Tire Center of California, Inc.*, No. 2:11-cv-03105-JAM-DAD, 2012 WL 6020103, at *2 (E.D.Cal. Dec. 3, 2012); *Burch v. Regents of the University of California*, 433 F.Supp.2d 1110, 1120-21 (E.D.Cal. 2006), and objections to prison records which are clearly what they purport to be are routinely overruled under Rule 901(b)(4), *e.g.*, *Thomas v. Quintana*, No. CV 10-2671-JGB (CWx), 2014 WL 5419418, at *3 (C.D.Cal. Oct. 22, 2014) (official Bureau of Prisons logs and

[11] Plaintiff's Exhibits A, B, and C.

records maintained in the ordinary course of business); *Howard v. Wang*, No. 1:10cv01783 AWI DLB PC, 2014 WL 3687728, at *3 (E.D.Cal. Jul. 24, 2014) (prison records maintained in inmate's central and medical files), *findings and recommendations adopted in full*, 2014 WL 5483739 (E.D.Cal. Oct. 29, 2014); *Abdullah v. CDC*, No. CIV S-06-2378 MCE JFM P, 2010 WL4813572, at *3 (E.D.Cal. Nov. 19, 2010) (finding an objection for lack of foundation and authentication unavailing where the records were from the plaintiff's prison file and they were created and maintained by prison officials), *findings and recommendations adopted in full*, 2011 WL 489599 (E.D.Cal. Feb. 7, 2011); *Sanchez v. Penner*, No. CIV S-07-0542 MCE EFB P, 2009 WL 3088331, at *5 (E.D.Cal. Sept. 22, 2009) (overruling lack of foundation and proper authentication objections to prison medical records submitted by the plaintiff). In this case, however, Plaintiff presents what he asserts is a handwritten copy of an inmate appeal dated February 8, 2011, upon which he wrote "Hard copy of 602 complaint, law library wouldn't copy, said wasn't legal material," and two CDCR 22 "Inmate/Parolee Request for Interview, Item or Service" forms. (Opp., Pl. Exs. A-C.) The CDCR forms Plaintiff purports to have filled out and submitted lack any indicia of official receipt or other distinctive characteristics sufficient to support a finding that they are what they purport to be; it is impossible to tell from the forms when, how, or even if they were submitted. The inmate appeal is not even a copy of the original, while the request forms were submitted by mail and received no response, yet Plaintiff purports to have subsequently submitted them to the supervisor's level of review. In sum, the forms are simply devoid of *any* content which would lend support to a finding that they are what they are purported to be, and therefore, they cannot be authenticated under Rule 901(b)(4).

Plaintiff also submitted a separate, very cursory declaration stating the dates he sent the appeal to the appeals coordinator and submitted the CDCR 22 forms. Documents may be authenticated through personal knowledge where they are attached to an affidavit and the affiant is competent witness who wrote the document, signed it, used it, or saw others do so. Fed. R. Evid. 901(b)(1) *Las Vegas Sands, LLC*, 632 F.3d at 533 (citing *Orr*, 285 at 773). Moreover, Plaintiff's competence to testify about matters within his personal knowledge may be inferred from his declaration. *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013); *Barthelemy v. Air*

*Line Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (per curiam). However, Plaintiff's declaration does not lay an adequate foundation to authenticate the appeal and the request forms. Even affording Plaintiff the leniency to which he is due as a pro se litigant and overlooking his failure to attach the exhibits to his declaration, the declaration nevertheless consists of bare statements regarding the dates on which he allegedly submitted the forms, and the forms themselves lack any indicia of genuineness, as previously discussed. Accordingly, the Court finds that the documents are not subject to authentication through Plaintiff's declaration. *See Beyene v. Coleman Sec. Servs., Inc.*, 854 F.3d 1179, 1182 (9th Cir. 1988) (declaration must lay adequate foundation for document).

Additionally, other factors further undercut the documents' authenticity. In his original complaint and amended complaint, Plaintiff specifically referred to his exhausted CDCR 602-HC appeal but made no mention any missing appeal or missing interview request forms. Likewise, Plaintiff's exhausted CDCR 602-HC appeal contains no mention of a missing appeal or missing interview request forms.

Accordingly, the Court finds that Plaintiff's Exhibits A, B, and C have not been authenticated and Defendants' objections are sustained. Fed. R. Evid. 901(a), (b)(1).

**2) <u>Other Evidence</u>**

Plaintiff fails to present any other evidence in support of his assertion that he filed a CDCR 602 appeal which was never processed, thereby rendering the appeals process unavailable to him. In response to Plaintiff's argument, Defendants produced evidence that while Plaintiff did send a letter dated February 15, 2011, to the Office of Internal Affairs, Plaintiff was informed by letter that he may not circumvent the appeals process and that the issue he raised was more appropriately addressed via the appeals process. (Doc. 71-3, Reply, Ex. C.) Plaintiff filed an inmate appeal on March 22, 2011, in response to the letter, but the appeal was screened out as untimely. (*Id.*, Ex. D.) Defendants point out that Plaintiff's letter and the cancelled appeal further undermine his bare assertion regarding a missing appeal and demonstrate his failure to properly exhaust his claim against custody staff for violating his rights the night of January 22, 2011.

In the absence of any supporting evidence, the Court finds that Plaintiff failed to meet his burden of demonstrating the unavailability of the appeals process with respect to a CDCR 602 which would otherwise have sufficed to exhaust his claim. Defendants are therefore entitled to summary judgment for failure to exhaust. Fed. R. Civ. P. 56; *Albino*, 747 F.3d at 1166.

**F. <u>Claim Against Lawson and Brockington</u>**

Finally, the Court finds that Defendants Lawson and Brockington are entitled to summary judgment on the merits of Plaintiff's claim against them, on the ground that he misidentified them as staff members who worked from 10:00 p.m. on January 22, 2011, to 6:00 a.m. on January 23, 2011. Although Plaintiff advances arguments in an effort to explain how they were named in error, he does not dispute that they were named in error based on a misinterpretation of CDCR sign-in/sign-out sheets, and he now identifies different staff members as the responsible ("correct") parties. (Opp., court record p. 3, lns. 24-25.)

**III. <u>Recommendation</u>**

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Plaintiff's motion for an extension of time to file a surreply, filed on July 7, 2014, be DENIED; and

2. Defendants' motion for summary judgment, filed on May 9, 2014, be GRANTED as follows:

a. Defendants' motion for summary judgment based on Plaintiff's failure to exhaust the available administrative remedies be GRANTED; and

b. Defendants Lawson and Brockington's motion for summary judgment be GRANTED on the ground that they were not on duty on the night in question and were misidentified as parties.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses, if any, are due

within **ten (10) days** from the date the objections are filed. Local Rule 304(d). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson*, 772 F.3d at 838-39 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 27, 2015**

**/s/ Sheila K. Oberto**
UNITED STATES MAGISTRATE JUDGE